THE SARAH CULLEN.[1]

KNICKERBOCKER STEAM TOWAGE CO. *v.* THE SARAH CULLEN.

(*District Court, S. D. New York.* March 30, 1891.)

MARITIME LIEN—TOWAGE—CREDIT OF THIRD PERSON—ESTOPPEL.

   Libelant rendered towage service to a vessel without express employment by her master, or agreement to pay. Libelant was afterwards informed that the R. Ice Company was to pay for the towage, and thereafter, for the above and subsequent towage services, rendered bills to such ice company, which were paid in part. No notice was given to the vessel owner that the ship was expected to pay for the towage until the failure of the ice company, six months after the first voyage. *Held*, that the service was not rendered on the credit of the vessel, and, under the circumstances of its dealings with the vessel, libelant was equitably estopped from subsequently demanding from her payment of the towage.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

In Admiralty.   Suit to enforce lien for towage.

*Owen, Gray & Sturges,* for claimant.

*Wing, Shoudy & Putnam,* (*Mr. Burlingham,* of counsel,) for libelant.

BROWN, J.  Upon all the evidence I am of the opinion that the libel for towage should not in this case be sustained.   The vessel was chartered, in effect, to the Ridgewood Ice Company, to bring ice from the Kennebec river to New York, towage to be paid by the charterers.   When the schooner arrived at the Kennebec river, she was taken by the libelant's tugs to the place of loading, without any express employment by the captain, or agreement to pay.   Before her return, as must be inferred from the evidence, the libelant was informed that the Ridgewood Ice Company was to pay the towage, which was equivalent to notice that the vessel was not to pay it.   The towage bills were sent accordingly by the libelant to the Ridgewood Company for various voyages, and a part was paid by that company.   No notice was ever given to the master or to the owners that the ship was held or expected to pay for the towage until after the failure of the Ridgewood Ice Company, and the appointment of a receiver in the latter part of October, some six months after the first voyage.   Had any demand of payment been made of the vessel at the time of her departure from Kennebec on the first voyage, or even afterwards, upon her return on the second voyage; or had any notice been given her that the prior towage was unpaid, there would have been perhaps sufficient grounds for inferring an implied contract to pay at least for the three subsequent towages.   But the master had no knowledge of the alleged local custom.   He had never agreed to pay any towage, and had no reason to suppose at the time the service was rendered, or afterwards, that these towages were not provided by the Ridgewood Company according to its agreement, until after its failure.   The circumstances seem to me to import the libelant's acceptance of the Ridgewood Company as its debtor from the first, and its only debtor; and that would simply be according to that company the same privilege that by usage belonged to the stockholders in the libelant's company, which covered a considerable part of the libelant's towage business.   I find, therefore, that the service was not rendered upon the credit of the vessel, but on the credit of the Ridgewood Ice Company; and that, if the libelant might originally have claimed a lien for towage, its subsequent dealings with the Ridgewood Company, and failure to make any demand of the ship, or give notice of any claim on her during the six months while the towage was collectible from the Ridgewood Company, are such laches, and naturally were so misleading, as to constitute an equitable estoppel against the present demand.   The libel should therefore be dismissed, with costs.